UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY DELLA MURA,

                                   Plaintiff,

         - against -

RICHARD THOMAS, et al.,

                                   Defendants.

19 CV 8699 (LMS)

DECISION AND ORDER

**THE HONORABLE LISA MARGARET SMITH, U.S.M.J.[1]**

      Defendant City of Mount Vernon ("City") and Defendant Mount Vernon Board of Water Supply ("MVBWS") (collectively referred to as "City Defendants") bring the instant motion to disqualify Benedict P. Kuehne and Michael Pizzi, Jr. from representing Defendant Lawrence Porcari and Defendant Richard Thomas, respectively, in a civil action brought by Plaintiff Anthony Della Mura ("Plaintiff").  Docket No. 51,[2] Mot. to Disqualify.  For the following reasons, City Defendants' motion is **GRANTED**.

## BACKGROUND

### I.    FACTUAL HISTORY

      The following facts are alleged in Plaintiff's Complaint.  Unless otherwise indicated, City Defendants (the only Defendants to have answered the Complaint) deny or lack information sufficient to form a belief as to the facts asserted therein.

---

[1] On March 12, 2020, the parties consented to the undersigned's jurisdiction for all purposes pursuant to 28 U.S.C § 636(c).  Docket No. 67, Notice of Consent.

[2] City Defendants' original motion to disqualify counsel, Docket No. 51, was flagged by the Clerk of Court as a deficient docket entry.  See Docket No. 51; Docket Entry dated 1/28/2020.  It was refiled as an amended motion to disqualify counsel, Docket No. 54, with an affidavit of John Arena in support of the amended motion, Docket No. 55.  The refiled version is identical to the original other than that it lacks John Arena's affidavit which was required to be filed separately.

1

Plaintiff filed this action on September 19, 2019, against Defendants Lawrence Porcari, Richard Thomas, Benjamin Marable,[3] the City of Mount Vernon, and the Mount Vernon Board of Water Supply for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act (18 U.S.C. § 1964), the Americans with Disabilities Act, and the First Amendment of the United States Constitution.  Docket No. 1, Complaint ("Compl."). Plaintiff alleges that he was employed by MVBWS as "Executive Director - Senior Bookkeeper."[4]  Compl. ¶ 16.  In January 2018, Plaintiff's left leg was surgically amputated below the knee.[5]  Id. at ¶ 17.  For a period of months following that surgery, Plaintiff was unable to work.[6]  Id.  During that period, on March 12, 2018, Defendant Thomas, then-Mayor of Mount Vernon, was arrested for campaign finance violations.[7]  Id. at ¶ 19.  Plaintiff alleges that Defendant Porcari, then-Corporation Counsel for the City of Mount Vernon, undertook a scheme beginning on approximately March 23, 2018, to steal funds from the MVBWS to pay for Defendant Thomas's criminal defense.  Id. at ¶¶ 20-21. Boies Schiller Flexner LLP conducted Defendant Thomas' initial legal representation, but that

---

[3] Defendant Marable has not answered the complaint and no attorney has appeared on his behalf. The Court would entertain a request by Plaintiff to enter default against Defendant Marable, but any such motion must be decided by the Honorable Nelson S. Román, to whom this matter was previously assigned, because Defendant Marable has not consented to the jurisdiction of the undersigned.  If Defendant Marable appears in this case prior to an entry of default, or subsequently pursuant to a properly executed waiver of the default, jurisdiction over this case would return to Judge Román until the Court receives a signed consent to the undersigned's jurisdiction.

[4] City Defendants admit that Plaintiff was employed by MVBWS as a Senior Bookkeeper. Docket No. 40, Answer, at ¶ 16; Counterclaims at ¶ 17.

[5] City Defendants deny knowledge of the truth or falsity of this allegation in its answer but allege this fact in its counterclaim.  Answer, at ¶ 17; Counterclaims at ¶ 41.

[6] City Defendants admit that Plaintiff was "unable to work for a period of time."  Answer, at ¶ 17 (internal quotation marks omitted).

[7] City Defendants admit that Defendant Thomas was arrested on March 12, 2018.  Answer, at ¶ 19.

firm was later replaced by Kuehne Davis Law. Kuehne and Pizzi represented Defendant Thomas starting in October 2018. Mot. to Disqualify, at 4, Ex. A-B. As compensation for their representation, Kuehne and Pizzi received $225,000.00 from the MVBWS bank account. Id. Each check was signed by Defendant Marable. Id. at Ex. B.

Plaintiff alleges that when he was given medical clearance to return to work in March 2018, Defendant Porcari told Plaintiff that Plaintiff would need to secure additional information from his doctor before he could return to work. Id. at ¶ 18. Plaintiff alleges that if he had been permitted to return to work at the time that he received his medical clearance, he would have detected Defendant Porcari's theft.[8] See id. at ¶ 23. Plaintiff also alleges that in addition to Defendant Porcari's preventing Plaintiff from returning to his employment as a Senior Bookkeeper, Defendant Porcari eliminated "Executive Director" from his title in April 2018, which resulted in a $7,000.00 per year reduction in pay, and, in May 2018, Defendant Porcari removed Plaintiff as a signatory on the MVBWS bank account.[9] Id. at ¶¶ 24.

Plaintiff alleges that he returned to his position as Senior Bookkeeper in June 2018.[10] Id. at ¶ 28. Plaintiff alleges that prior to his return he had requested accommodations from MVBWS for his having an amputated leg and had discussed his requests with MVBWS Superintendent

---

[8] City Defendants allege that Plaintiff "was the sole grantee of access to the MVBWS checking accounts until sometime in early 2018." Answer, Counterclaims at ¶ 19.

[9] City Defendants admit that "Plaintiff was removed as a signatory from MVBWS bank accounts at some point." Answer, at ¶ 25.

[10] Plaintiff alleges that he was medically cleared to return to work for a second time in May 2018 and thereafter was cleared by MVBWS Superintendent John Arena. Id. ¶ 26. City Defendants admit only that MVBWS received a letter from Plaintiff's doctor on or about May 31, 2018, indicating he was medically cleared to return to work and that his workspace was adequate. Answer, ¶ 26. Plaintiff alleges that he attempted to return to work on May 29, 2018, but was told to leave the MVBWS offices that same day, allegedly on Defendant Porcari's orders. Compl. at ¶ 27. City Defendants deny knowledge of the truth or falsity of this allegation. Answer, at ¶ 27.

3

John Arena.  Id. at ¶ 29.  Plaintiff alleges that he was not given these accommodations upon his return.  Id. at ¶ 30.  Plaintiff alleges that instead of receiving his requested accommodations, he was moved to a small office outside of the MVBWS offices, and that there were shelves beneath his desk in the new office that prevented him from stretching his legs, which caused him great pain.  Id.  Plaintiff further alleges that his requests to be moved back into the MVBWS office and to have the shelves removed from under his desk were ignored by MVBWS Commissioner Defendant Marable and his staff.  Id. at ¶ 31.  Moreover, Plaintiff alleges that his work computer "could not access MVBWS's books;" Defendant Marable told Plaintiff that the decision to restrict his access "was coming from 'upstairs.'"  Id. at ¶ 32.  Plaintiff understood this to mean that Defendant Thomas and Defendant Porcari had ordered his access to be restricted.  Id.  Plaintiff further alleges that "[w]ithin two weeks of returning to work, [Plaintiff] was hit with false disciplinary charges proffered by Defendants Marable and Porcari."  Id. at ¶ 33.  In September 2018 Plaintiff had received a letter, a statement of "Official Charges," and a statement of "Disciplinary Charges" from Defendant Marable falsely accusing him of insubordination for failure to train another employee.  Id. at ¶¶ 36-37, 40.  Plaintiff alleges that on October 1, 2018, Mount Vernon police officers removed Plaintiff from his office; he was thereafter suspended.  Id. at ¶ 41-42.  Plaintiff alleges that Defendant Porcari served as the hearing officer for Plaintiff's disciplinary charges,[11] and in May 2019, that Defendant Porcari sought to settle the disciplinary matter with Plaintiff.  Id. at ¶ 42-43.  The matter was not resolved.  Plaintiff alleges that on May 29, 2019, Defendant Porcari was arrested on charges "in connection with the scheme 'constituting a systematic and ongoing course of conduct with intent to' steal and defraud the

---

[11] City Defendants deny having knowledge of the truth or falsity of this allegation, Answer, at ¶ 42, but allege in its counterclaims that "Plaintiff participated in an official hearing conducted by Porcari with regard to the formal charges leveled against him."  Answer, Counterclaims at ¶ 52.

MVBWS."[12]  Id. at ¶ 44-45.  City Defendants contend that Plaintiff remains on paid suspension.[13]  Answer, Counterclaims at ¶ 53.

City Defendants assert that they have brought a civil action against Kuehne and Pizzi in New York Supreme Court (Index No.70550/2019) "based on [Kuehne and Pizzi's] willing receipt of funds they knew to be stolen from MVBWS."  Docket No. 52, Reply, at 2.  Another law firm that represented Defendant Thomas in the state criminal matter, Boies Schiller Flexnor, LLP, was also named in the suit.  Id. at 3-4.  City Defendants assert that they have already received over $136,000.00 from Boies Schiller Flexnor, LLP, as a result of the pending state court litigation.  Id. at 3-4.

## II.    PROCEDURAL HISTORY

In a motion dated June 6, 2019, Kuehne and Pizzi sought admission pro hac vice to appear on Defendant Porcari's behalf in Porcari's state court criminal action.  Mot. Dismiss, Ex. 1 ("Zuckerman Decision") at 1.  The People of the State of New York submitted an Affirmation in Opposition to Kuehne and Pizzi's motion, which was dated June 14, 2019.  Id. at 2.  The

---

[12] City Defendants admit that Defendant Porcari was arrested on May 29, 2019.  Answer, at ¶ 44.

[13] City Defendants have asserted factual allegations and counterclaims against Plaintiff for unjust enrichment, breach of fiduciary duty, fraudulent misrepresentation, and conversion related to Plaintiff's own allegedly improper receipt of funds from MVBWS in 2016 and 2017, and a crossclaim against the individual Defendants for indemnification.  Answer, at 18-31.  City Defendants' Answer, including its Crossclaim and Counterclaims, was filed on November 14, 2019.  Plaintiff requested two adjournments of its deadline to answer City Defendants' counterclaims, Docket Nos. 47, 49; its most recent deadline to answer or otherwise respond was February 3, 2020.  Docket No. 50, Order.  Plaintiff has not answered the counterclaims and related allegations.   Individual Defendants Thomas, Porcari, and Marable have not answered the crossclaim.  On March 23, 2020, the undersigned ordered a stay of discovery pending the Court's decision on Defendants Thomas and Porcari's forthcoming motion to dismiss.  Minute Entry for 3/23/2020.

Honorable David S. Zuckerman denied Kuehne and Pizzi's motion in a decision dated July 12, 2019.[14] Id. at 13. Judge Zuckerman's decision is attached to City Defendants' motion to disqualify Kuehne and Pizzi in this federal action as Exhibit 1.

On October 22, 2019, Michael Pizzi properly filed his motion to appear in the federal action pro hac vice on behalf of Defendant Richard Thomas, and on October 23, 2019, Benedict Kuehne properly filed his motion to appear pro hac vice on behalf of Defendant Lawrence Porcari. Docket Nos. 25, 27.[15] On October 23, 2019, City Defendants filed a letter requesting a pre-motion conference before Judge Román seeking permission to move to disqualify Kuehne and Pizzi as counsel. Docket No. 28, Letter Mot. On October 24, 2019, Plaintiff filed a letter with the Court acknowledging that Plaintiff viewed Kuehne and Pizzi as witnesses in this case. Docket No. 29, Letter. On October 24, 2019, Judge Román granted Kuehne and Pizzi's motion for admission pro hac vice and set a briefing schedule for City Defendants' motion to disqualify Kuehne and Pizzi. Docket Nos. 30-31. The motion to disqualify counsel, opposition, and reply were filed simultaneously on January 3, 2020, in accordance with Judge Román's briefing schedule. Docket Nos. 51-53. The undersigned considers this matter fully submitted.

---

[14] Judge Zuckerman ordered that the moving papers along with his decision "shall remain under seal until such time, if any, that they are unsealed by Order of a court of competent jurisdiction." Id. at 13. City Defendants have not attached with this submission an order from a court of competent jurisdiction unsealing Judge Zuckerman's decision. For that reason, the Court will direct City Defendants to submit documentation informing the Court whether Judge Zuckerman's decision has been unsealed. Otherwise, the Court will direct the Clerk of Court to seal the docket entries that contain a copy of the Zuckerman Decision.

[15] The attorney's prior filings of these motions were flagged as deficient by the Clerk of Court.

**DISCUSSION**

**I.      LEGAL STANDARD**

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process."  Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted).  "District courts have broad discretion to disqualify attorneys, but it is a drastic measure that is viewed with disfavor in this Circuit" due to the delay it involves and its potential for misuse as a litigation tactic.  Ritchie v. Gano, No. 07 Civ. 7269 (VM)(JCF), 2008 U.S. Dist. LEXIS 67770, at *2 (S.D.N.Y. Sept. 8, 2008) (internal quotation marks omitted); see, First NBC Bank v. Murex, LLC, 259 F. Supp. 3d 38, 56 (S.D.N.Y. 2017).  American Bar Association and New York disciplinary rules provide guidance when deciding disqualification motions, but these rules are not binding.  See Hempstead, 409 F.3d at 132.  "The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court."  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72-73 (2d Cir. 1990).

When determining whether disqualification of counsel is appropriate, the Court must "balance a client's right to freely choose his [or her] counsel against the need to maintain the highest standards of the profession."  Hempstead, 409 F.3d at 132 (internal quotation marks omitted).  The Court should not disturb a client's choice of counsel unless the attorney's representation would so taint the prosecution or defense of a matter as to call into question the integrity of the adversarial process.  Cf. id.; Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981) ("Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation of the [disciplinary rules] poses a significant risk of trial taint."); Decker v.

7

Nagel Rice LLC, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010).  "However, any doubt [with respect to whether disqualification should be ordered] is to be resolved in favor of disqualification." Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd., No. 07 Civ. 7893 (DAB)(HBP), 2014 U.S. Dist. LEXIS 38655, at *16 (S.D.N.Y. Mar. 24, 2014) (quoting Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975)) (internal quotation marks omitted) (alteration in original). Although the Court is directed to resolve any doubts in favor of disqualification, "the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary."  Decker, 716 F. Supp. 2d at 231-32.  Speculation or the mere appearance of impropriety is not enough to warrant disqualification.  Reyes v. Golden Krust Caribbean Bakery, No. 15 Civ. 7127 (DF), 2016 U.S. Dist. LEXIS 121623, at *25 (S.D.N.Y. Sept. 1, 2016); Board of Education v. Nyquist, 590 F.2d 1241, 1247 (2d Cir. 1979).

## II.  APPLICATION

City Defendants assert two grounds in support of the motion. First, they claim that Kuehne and Pizzi's representation of Defendant Porcari and Defendant Thomas violates the attorney-witness rule set forth in Rule 3.7 of the New York Rules of Professional Conduct ("NYRPC").  Mot. to Disqualify, at 2, 15-18.  Second, they claim Kuehne and Pizzi's involvement in the alleged conspiracy and representation of Defendant Thomas in related criminal proceedings presents a conflict of interest which violates Rule 1.7 of the NYRPC.  Id. at 2, 19-22.

### *Attorney-Witness Rule*

Under NYRPC Rule 3.7 (commonly referred to as the attorney-witness rule), "a lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a

witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or, (5) the testimony is authorized by the tribunal."  NYRPC 3.7(a).  Disqualification to forestall a violation of this rule "may be required only when it is likely that the testimony to be given by the witness is necessary."  John Wiley & Sons, Inc. v. Book Dog Books, LLC, (quoting S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp., 69 N.Y.2d 437, 445-46 (1987)).  "Additionally, where only the moving party intends to call the adversary's attorney as a witness, the movant must demonstrate both that the lawyer's testimony is necessary and that there exists a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client."  Id. (quoting Acker v. Wilger, No. 12 Civ. 3620 (JMF), 2013 U.S. Dist. LEXIS 47606, at *4 (S.D.N.Y. Mar. 29, 2013) (internal quotation marks omitted); see also, Reyes, 2016 U.S. Dist. LEXIS 121623 at *29 ("Where the attorney's adversary is the only party that intends to call the attorney as a witness, the adversary 'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial.'").  To determine whether a witness-advocate's testimony would be necessary, the Court considers "factors such as the significance of the matters, weight of the testimony, and availability of other evidence."  Acker, 2013 U.S. Dist. LEXIS 4706 at *4 (quoting Finkel v. Frattarelli Bros., Inc., 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010)).  "[P]rejudice exists where the testimony would be sufficiently adverse to the factual assertions or account of events offered on behalf of the client,

such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." Id.

City Defendants contend that Kuehne and Pizzi will likely be called as witnesses[16] in this case because they received a significant sum from MVBWS's account, improperly directed by Defendant Porcari, to compensate them for their representation of Defendant Thomas in the state criminal action. See Mot. to Disqualify, at 2-3. This receipt, City Defendants contend, makes Kuehne and Pizzi necessary witnesses to events central to the facts at issue in this case. See id. at 16-17. Kuehne and Pizzi argue that their receipt of MVBWS funds is not a material allegation in the complaint, and any testimony which Kuehne and Pizzi might give would be limited to confirming receipt of MVBWS funds. Docket No. 53, Opposition ("Opp.") at 7-10. Such testimony, they contend, could be presented by administrative staff from counsels' law firm. Id. at 10.

The Court agrees with Kuehne and Pizzi that their testimony is not necessary. Plaintiff's Civil RICO claim alleges that "[t]he actions taken against Plaintiff was a part and in furtherance of the racketeering scheme to steal from and defraud MVBWS. The portion of the scheme that victimized [P]laintiff and the entire scheme itself both formed a systematic pattern of racketeering." Compl. at ¶ 56. To the extent that Plaintiff's RICO claim includes both the conspiracy to prevent him from performing his duties as Senior Bookkeeper and the conspiracy to steal funds from MVBWS, an inquiry into Kuehne and Pizzi's potential role in the conspiracy to defraud MVBWS would be material. But materiality is not necessity. Even if it was uncovered during discovery that Kuehne and Pizzi were knowing participants in the conspiracy

---

[16] Plaintiff has not joined City Defendants' motion to disqualify Kuehne and Pizzi, but Plaintiff informed the Court by letter that, in light of City Defendants' representations, it viewed Kuehne and Pizzi as witnesses. Docket No. 29, Letter.

to misuse MVBWS funds, Plaintiff does not need to prove counsels' involvement to succeed on its RICO claim, as Kuehne and Pizzi are not defendants in this action. Neither would City Defendants need to elicit testimony from either Kuehne or Pizzi to establish a defense.[17] Furthermore, Defendant Porcari has been convicted of crimes related to his role in theft of MVBWS funds, which can stand on its own without testimony from Kuehne and Pizzi of witnessing Porcari direct the misuse of MVBWS funds. See Reply at 3.

Kuehne and Pizzi could be called to testify about receiving funds from MVBWS for representing Defendant Thomas, but this evidence could also be introduced through the checks MVBWS issued to Kuehne Davis Law Professional Association, the testimony of John Arena (whose affidavit is attached to City Defendants' motion), and/or the testimony of administrative staff at Kuehne Davis Law. Moreover, this evidence could be presented with necessary redactions and limitations in order to prevent the jury from associating the named partner, Kuehne, with the firm receiving the funds. City Defendants also failed to show that the advocate-witness's testimony would be prejudicial to his client, instead arguing that Defendant Thomas and Defendant Porcari would not be prejudiced by the disqualification. See Mot. to Disqualify, at 18. For these reasons, the Court finds that the potential for Kuehne and Pizzi to be called as a witness in this case does not require Kuehne or Pizzi be disqualified.

---

[17] City Defendants raise additional potential lines of inquiry as to Kuehne and Pizzi's involvement in the underlying conspiracy, see Mot. to Disqualify, at 6-7, 15-17, but City Defendants have failed to show how these lines of inquiry are necessary to a claim or defense in this case. Instead, these additional lines of inquiry are presented in a speculative fashion and appear to be relevant only to City Defendants' state action against Kuehne and Pizzi. The Court should not need to speculate as to the various approaches counsel could take in this case such that Kuehne and Pizzi's testimony would become necessary. The burden is on City Defendants as the movants to establish that Kuehne and Pizzi's testimony is necessary for trial in this case. They have failed to do so.

*Conflict of Interest*

City Defendants also raise the concern that Kuehne and Pizzi's prior representation of Defendant Thomas in Thomas's state criminal proceedings provided them access to confidential and/or potentially privileged information which may impact their representation in this case, and that counsels' direct involvement in the underlying facts of this case could pose an unresolvable conflict of interest.  Mot. to Disqualify, passim.  Kuehne and Pizzi contend that since they were not witnesses in any of the underlying criminal proceedings, and since they believe they are unlikely to be called as witnesses in this proceeding, there is at most only a potential conflict of interest presented by their representation of Defendants Porcari and Thomas, and such conflict is waivable.  Opp. at 13-15.

Under NYRPC Rule 1.7, "a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interest; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests."  NYRPC 1.7(a).[18]  "Disqualification based on a concurrent conflict of interest 'has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, . . . or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation."  Reyes, 2016 U.S. Dist. LEXIS 121623 at *38.  "Typically, a court will only disqualify an attorney on the basis of a conflict of interest when it 'undermines the court's confidence in the attorney's representation of

---

[18] Rule 1.7(b) lists several exceptions to the concurrent conflict of interest rule described in subsection a.

his [or her] client." Goodwine v. Lee, No. 10 Civ. 6019 (LMS), 2014 U.S. Dist. LEXIS 124414, at *12 (S.D.N.Y. Sept. 3, 2014) (quoting Solow v. Conseco, Inc., No. 06 Civ. 5988 (BSJ)(THK), 2007 U.S. Dist. LEXIS 40479, at *9 (S.D.N.Y. Jun. 4, 2007)).

There are two areas where a conflict might arise in this case: (1) Kuehne and Pizzi potentially possess privileged information derived from their representation of Defendant Thomas in his criminal proceeding which might hinder counsel's ability to ethically represent Defendant Porcari in this action, and (2) Kuehne and Pizzi's potential involvement in the underlying conspiracy to defraud MVBWS may cause them to pursue their own interests at the expense of their clients.

The Court finds Judge Zuckerman's ruling denying Kuehne and Pizzi's motion for admission pro hac vice as counsel for Defendant Porcari in the state court criminal action instructive on the conflict of interest issues. [19] Judge Zuckerman considered that Kuehne and Pizzi's prior representation of Defendant Thomas could create difficulties when it came to examining Thomas on the stand, that Kuehne and Pizzi possessed "proprietary knowledge" from their prior representation which may be disclosed to Defendant Porcari, and that Kuehne and Pizzi had a financial interest in this case as a result of receiving some of the stolen MVBWS funds. Mot. to Disqualify, Ex. 1 at 12-14. The court denied Kuehne and Pizzi's motion to appear pro hac vice on behalf of Defendant Porcari, based in part on its consideration of these issues. These conflicting interests are no less prevalent now than they were when Kuehne and Pizzi made their application before Judge Zuckerman. [20]

---

[19] The copy of Judge Zuckerman's decision which City Defendants attached to its motion appears to have been redacted.

[20] This Court's consideration is distinct from Judge Zuckerman's in part because in this case the professional conflicts of interest related to representation of Defendant Thomas only apply to Kuehne, Defendant Porcari's counsel in the instant matter. This case has the additional wrinkle

The Court is particularly concerned by the potential for Kuehne and Pizzi's self-interest to taint the discovery process and trial. Kuehne and Pizzi are currently defending a civil action in state court brought by City Defendants in which City Defendants claim that Kuehne and Pizzi willingly received funds from MVBWS that they knew to be stolen. See Reply at 2, 4. Kuehne and Pizzi also have an ongoing interest in avoiding criminal prosecution for their potential involvement in the fraud. These concerns are in addition to the financial interest Judge Zuckerman observed in his decision denying pro hac vice admission. The Court believes that these interests present actual conflicts because they exist regardless of whether Kuehne and Pizzi testify at trial or whether they possess confidential or privileged information.[21] Such significant personal interests, coupled with the professional conflicts, seriously undermine the Court's confidence that counsel can pursue this case effectively while complying with the ethical standards of the profession.

Furthermore, even if the Court considered this conflict to be waivable, the Court would require a communication written by, and not simply on behalf of, each client attesting to having been thoroughly advised of the potential conflicts of interest in this case and explicitly waiving such conflicts. See NYRPC 1.7(b); cf. NYRPC 1.9(a). Here, Kuehne and Pizzi simply argue in their opposition to the instant motion that Defendants Porcari and Thomas "have authorized their

---

that Kuehne and Pizzi had an attorney-client relationship with Defendant Porcari which introduces analogous professional conflicts for Pizzi related to any communications or confidential information he may have received during his representation of Defendant Porcari.

[21] The Court acknowledges that the professional conflicts related to examining Defendant Thomas or Defendant Porcari at trial would only arise if Thomas and Porcari testify. However, it is almost certain that if this case proceeds to trial, Thomas and Porcari will be called as witnesses. Moreover, a conflict need not be actual for the Court to disqualify counsel. Cf. Reyes, 2016 U.S. Dist. LEXIS 121623 at *38. The Court is also concerned that the conflict presented by Kuehne and Pizzi's prior representation of Thomas and Porcari could infect the discovery process.

counsel of record to make clear that they waive any and all actual or potential conflicts that could possibly result." Opp. at 14. This statement alone is not enough to establish waiver. For these reasons, the Court finds that City Defendants have met their burden to establish that the conflicts of interest presented in this case warrant disqualification.

## CONCLUSION

For the forgoing reasons, City Defendants' motion to disqualify Kuehne and Pizzi as counsel for Defendants Porcari and Thomas, respectively, is **GRANTED**. The Court will separately enter an Order rescheduling the anticipated Motions to Dismiss. The Clerk of Court is respectfully directed to terminate any outstanding motions at Docket Nos. 51 and 54. City Defendants are directed to inform the Court whether Judge Zuckerman's decision has been unsealed for use in this matter.

Dated: April 30, 2020
       White Plains, New York

                                        SO ORDERED

                                        _____
                                        Hon. Lisa Margaret Smith
                                        United States Magistrate Judge
                                        United States District Court