UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ANTHONY DELLA MURA,

                              Plaintiff,                          **DECISION AND ORDER**

            -against-                                             19-cv-8699 (AEK)

RICHARD THOMAS, et al.,

                              Defendants.
------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

Plaintiff Anthony Della Mura filed this action on September 19, 2019 against Defendants

Richard Thomas, Lawrence Porcari, Benjamin Marable, the City of Mount Vernon (the "City"),

and the Mount Vernon Board of Water Supply (the "MVBWS").  *See* Complaint, ECF No. 1

("Compl.").  Defendants Thomas, Porcari, and Marable (collectively, the "Individual

Defendants") are named both in their individual capacities and in their official capacities as

officials of the City.

The complaint asserts causes of action for (1) violations of 18 U.S.C. § 1964, the civil

Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) failure to accommodate

Plaintiff's disability under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et

seq.* ("ADA"); (3) disability discrimination under the ADA; and (4) interference with Plaintiff's

First Amendment right to free expression, pursuant to 42 U.S.C. § 1983.  Compl. ¶¶ 50-77.  The

City and the MVBWS (collectively, the "City Defendants") filed four counterclaims against

Plaintiff in their answer, alleging unjust enrichment, breach of fiduciary duty, fraudulent

misrepresentation, and conversion.  *See* ECF No. 40 ("City Defs.' Answer") at 25-28.[1]  In

addition, the City Defendants filed a crossclaim for indemnification against the Individual

Defendants, asserting that the City Defendants should be allowed to recover from the Individual

Defendants any amounts for which the City Defendants are held liable due to the actions of the

Individual Defendants.  *Id.* at 29-31.

Before the Court are motions to dismiss the complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure filed by Defendant Porcari (ECF No. 90), Defendant Thomas

(ECF No. 102), and Defendant Marable (ECF No. 128).[2]  Defendant Thomas's motion also seeks

dismissal of the City Defendants' crossclaim pursuant to Rule 12(b)(6).  The City Defendants did

not file a motion to dismiss.  *See* ECF No. 97.  Plaintiff filed a single, consolidated opposition to

the Porcari and Thomas motions to dismiss (ECF No. 105), but Plaintiff did not oppose the

Marable motion to dismiss.  Plaintiff also has not moved to dismiss the City Defendants'

counterclaims.[3]  For the following reasons, the Individual Defendants' motions to dismiss the

complaint are GRANTED, and Defendant Thomas's motion to dismiss the City Defendants'

crossclaim is GRANTED.

---

[1] To avoid confusion, references to the City Defendants' Answer, which includes the City
Defendants' counterclaims against Plaintiff and their crossclaim against the Individual
Defendants, are to the page numbers of that document, rather than to paragraph numbers.  The
City Defendants' Answer has two sets of overlapping paragraph numbers—paragraphs 1-92 for
the answer, and paragraphs 1-98 for the counterclaims and crossclaim—and as a result,
references to the paragraph numbers alone could be ambiguous.

[2] Defendant Marable's memorandum of law in support of his motion to dismiss is
virtually identical to Defendant Porcari's memorandum of law in support of his motion to
dismiss.

[3] Indeed, despite requesting and receiving two extensions of time to file an answer to the
counterclaims, *see* ECF Nos. 47-50, it appears as though Plaintiff still has not responded to the
counterclaims at all.

# BACKGROUND

## A. Factual Background

The following allegations are taken from the complaint and the City Defendants' crossclaim and are assumed to be true for the purposes of these motions.[4]  *See* Compl. ¶¶ 16-49; City Defs.' Answer at 20-31.

### 1. Complaint

Plaintiff began working for the MVBWS in March 2012; he was promoted to Senior Bookkeeper the following year, and ultimately received the title "Executive Director – Senior Bookkeeper."  Compl. ¶ 16.  In March 2017, Plaintiff became ill, and his left leg was surgically amputated below his knee on January 26, 2018.  *Id.* ¶ 17.  Plaintiff was unable to work for a period of time and collected disability benefits.  *Id.*  In March 2018, Plaintiff informed his employer that he had been cleared to return to work, but Defendant Porcari, then the Corporation Counsel for the City, said that Plaintiff would need to provide more information from his doctor before he could return.  *Id.* ¶ 18.  Plaintiff's return to work was further delayed by another scheduled round of rehabilitation.  *Id.*

On March 12, 2018, Defendant Thomas, then the Mayor of the City, was arrested and charged with campaign finance violations.  *Id.* ¶ 19.  Plaintiff alleges that on or about March 23, 2018, while Plaintiff was out on disability, Defendant Porcari began to steal funds from the MVBWS to pay for Defendant Thomas's legal fees and for a public relations firm.  *Id.* ¶¶ 19-21.  According to the complaint, Defendant Porcari stole $365,000 from the MVBWS between

---

[4] Because the allegations in the counterclaims are not the subject of any pending motion, the Court will not provide a recitation of those allegations here.

March 23 and November 5, 2018 by transferring the money from the MVBWS bank account at Sterling Bank.  *Id.* ¶¶ 21-22.

On April 5, 2018, while Plaintiff was still out on disability, Defendant Porcari eliminated the "Executive Director" designation from Plaintiff's title, a demotion that reduced Plaintiff's salary by $7,000 per year.  *Id.* ¶ 24.  Defendant Thomas removed Plaintiff as a signatory to all MVBWS bank accounts on May 15, 2018, which prevented Plaintiff from reviewing MVBWS bank records.  *Id.* ¶ 25.  On May 21, 2018, Plaintiff's doctor told Plaintiff he could return to work starting the next day, and the Superintendent of the MVBWS, John Arena, cleared Plaintiff to return to work on May 29, 2018.[5]  *Id.* ¶ 26.  When Plaintiff returned to the office on May 29, however, Mr. Arena told him that "under orders from Lawrence Porcari he must leave the office."  *Id.* ¶ 27.  Defendant Porcari claimed that Plaintiff had not provided the correct documentation to return to work.  *Id.* ¶ 28.  Plaintiff finally received permission to return to work on June 12, 2018.  *Id.*

Prior to returning to work, Plaintiff requested accommodations for his amputated leg and discussed those accommodations with Mr. Arena.  *Id.* ¶ 29.  Plaintiff believed these accommodations were reasonable and minor, and expected that they would be met.  *Id.*  But when Plaintiff returned to work, he was placed in a tiny office outside of the MVBWS offices.  *Id.* ¶ 30.  Plaintiff could not stretch his legs because shelves had been placed under his desk, which caused him pain.  *Id.*  Plaintiff's requests that he be moved into the MVBWS offices and that the shelves under his desk be removed were ignored by Defendant Marable, who was then the Commissioner of the MVBWS, and his staff.  *Id.* ¶ 31.  Plaintiff was given a computer that

---

[5] The complaint states that Mr. Arena "cleared [Plaintiff] to return to work on May 29, 2019," but given the context, the Court assumes that this is a typographical error and that the actual date was May 29, 2018.

could not access the MVBWS's accounting books, despite his role as the Senior Bookkeeper for the agency, and Defendant Marable repeatedly denied Plaintiff's requests for access to QuickBooks. *Id.* ¶ 32. Defendant Marable eventually told Plaintiff that the order barring Plaintiff from accessing the MVBWS books was coming from "upstairs"; Plaintiff interpreted "upstairs" as a reference to Defendants Thomas and Porcari. *Id.* According to the complaint, Defendants Marable and Porcari also filed false disciplinary charges against Plaintiff two weeks after Plaintiff returned to work, but no action was ever taken on the charges and no official ever followed up with him about them. *Id.* ¶¶ 33-34.

In August 2018 Plaintiff filed a notice of claim against the City for subjecting him to a hostile work environment, failing to make reasonable accommodations for his disability, and demoting him and lowering his pay. *Id.* ¶ 35. The City received the claim on September 7, 2018. *Id.* On September 11, 2018, Defendant Marable emailed Plaintiff, copying Defendant Thomas and "Legal" (*i.e.*, Defendant Porcari) among others, falsely accusing Plaintiff of failing to follow orders to train a junior bookkeeper. *Id.* ¶ 36. The subject line of the email was "insubordination," and Defendant Marable stated that appropriate action was to follow. *Id.* Plaintiff received "Official Charges" regarding his alleged failure to train an employee on September 24, 2018. *Id.* ¶ 37.

Also on September 24, 2018, Mount Vernon City Council member Andre Wallace visited Plaintiff's office with Defendant Marable, seeking information about the MVBWS's budget and finances. *Id.* ¶ 38. Mr. Wallace asked Plaintiff what the reserve was, and Plaintiff provided information to Mr. Wallace to the best of his knowledge. *Id.* ¶ 38. When it became apparent that money was missing from the MVBWS, Defendant Marable told Mr. Wallace that the money was missing due to Plaintiff's "bad bookkeeping." *Id.* ¶ 39.

On September 28, 2018, Plaintiff was served with new disciplinary charges.[6]  *Id.* ¶ 40.
Then, on October 1, 2018, at the direction of Defendant Thomas, Mount Vernon police officers
removed Plaintiff from his office.  *Id.* ¶ 41.  Plaintiff was suspended from his job pending a
hearing.  *Id.* ¶¶ 41-42.  When his disciplinary hearing was held some months later, the hearing
officer was Defendant Porcari.  *Id.* ¶ 42.  On May 22, 2019, Defendant Porcari wrote to
Plaintiff's legal representative, urging Plaintiff to agree to a settlement; however, settlement
would preclude Plaintiff from pursuing any action against the Defendants.  *Id.* ¶ 43.

On May 29, 2019, Defendant Porcari was arrested pursuant to an indictment for charges
of corrupting the government in the first degree; grand larceny in the second degree as a crime of
public corruption; defrauding the government; and four counts of offering a false instrument for
filing in the first degree.  *Id.* ¶ 44.  All of these charges were in connection with an alleged
scheme to steal from and defraud the MVBWS.  *Id.* ¶ 44.  Despite the indictment, Defendant
Porcari continued to oversee Plaintiff's disciplinary proceedings and continued to encourage
Plaintiff to settle the matter and agree not to pursue any claims against the City or its employees.
*Id.* ¶ 45.  On July 8, 2019, Defendant Thomas pled guilty to stealing money from his campaign
committee.  *Id.* ¶ 46.

Plaintiff alleges that due to the theft of funds from the MVBWS, the agency raised water
rates for residents and business in the City.  *Id.* ¶ 47.  During the summer of 2018, as the theft
was ongoing, the MVBWS raised rates from $3.30 per 100 cubic feet to $3.75 per 100 cubic feet,
a 13 percent increase.  *Id.*  No such increase had been required in the previous three years.  *Id.*

---

[6] The complaint does not specify what these charges were for, except to say that they
"listed much more serious charges than the insubordination for failure to train a junior
employee."  Compl. ¶ 40.

## 2. The City Defendants' Crossclaim for Indemnification

According to the crossclaim, Cross-Defendants Thomas, Porcari, and Marable were each elected or appointed officers of the City Defendants; while he was serving as Mayor of the City, Thomas appointed Marable to be the Commissioner of the MVBWS.  City Defs.' Answer at 29. Thomas's office was declared vacant as of July 8, 2019 when he pled guilty to two misdemeanors involving campaign finance irregularities.  *Id.*  Marable retired from his position as Commissioner of the MVBWS in early 2019.  *Id.*  Porcari was terminated from his position as Corporation Counsel in August 2019 following his indictment on felony charges related to unauthorized transfers of money from the MVBWS to fund Thomas's criminal defense.  *Id.* Prior to his termination, Porcari regularly advised the MVBWS on legal matters.  *Id.*

Together, the Cross-Defendants exercised complete control over all aspects of the MVBWS, including all personnel and financial control issues.  *Id.*  Only Thomas and Marable had the authority to issue checks from the MVBWS account during the relevant time period, *i.e.*, after Plaintiff's access to the MVBWS checking accounts was revoked.  City Defs.' Answer at 30.  Porcari regularly served as a surrogate for Thomas in directing Marable to take certain actions, including the issuance of checks against MVBWS accounts.  *Id.*  Funds were transferred from the MVBWS by the Cross-Defendants for purposes not authorized by the City, the Mount Vernon Board of Estimate and Contracts, or the MVBWS.  *Id.*  Specifically, the Cross-Defendants transferred the funds to pay for the criminal defense of Thomas, despite the fact that Thomas's alleged crimes had nothing to do with the activities of the MVBWS or the City.  *Id.*  In addition to the legal fees paid to the firm that was principally representing Thomas in his criminal proceedings, approximately $225,000 was transferred to two other criminal defense attorneys for Thomas's benefit.  City Defs.' Answer at 31.

The City Defendants contend that if the allegations of the complaint are proven, the City Defendants may be held liable for the actions of the Cross-Defendants, actions which may constitute criminal conduct not within the scope of their office(s) or employment and not subject to absolute or qualified immunity.  *Id.*  According to the crossclaim, the principles of indemnification should shift any and all liability borne by the City Defendants to the Cross-Defendants.  *Id.*

## DISCUSSION

### A.  Legal Standard for Evaluating Motions to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pleaded factual allegations in the complaint as true. *Ashcraft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).  The court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).  That said, a court is not required to accept legal conclusions set forth in a complaint as true, and "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Rather, to survive a motion to dismiss, a complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." *Id.* (quotation marks omitted).  A claim is facially plausible when the complaint contains enough facts to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.*  Put another way, a plaintiff must set forth enough facts to "nudge [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "Although allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Lynch*, 952 F.3d at 75 (quotation marks, citations, and alterations omitted). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

### B. The Individual Defendants' Motions to Dismiss the Complaint

Each of the four causes of action in the complaint is pled against each of the Individual Defendants.[7]  The Court considers each claim in turn.

### 1. RICO Claim

The RICO statute makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc*, 385 F.3d 159, 173 (2d Cir. 2004).  To state a civil RICO claim, a plaintiff must show (1) that the defendants committed a substantive RICO violation, and (2) that the violation proximately caused an injury to plaintiff's business or property.  *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 196 (2d Cir. 2019).  As to the first element, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *Bigsby v. Barclays Capital Real Estate, Inc.*, 298 F. Supp. 3d 708, 716 (S.D.N.Y. 2018).  "The Supreme Court has explained that a RICO enterprise

---

[7] The ADA claims and the Section 1983 claim all are directed at both of the City Defendants as well; the civil RICO claim is directed at the City, but not at the MVBWS.  *See* Compl. ¶¶ 50-77.

is 'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Capital*, 385 F.3d at 173 (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).  "Racketeering activity" encompasses any act indictable for crimes enumerated in 18 U.S.C. § 1961(1)(B). *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 438-39 (S.D.N.Y. 2019).  To establish a "pattern" of racketeering activity, a plaintiff must plead "at least two predicate acts, show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  Predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240.

### a.  Plaintiff's Standing to Bring Civil RICO Claim

"To satisfy RICO's standing requirements, a plaintiff must demonstrate, '(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation.'" *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (*per curiam*) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990)); *see* 18 U.S.C. § 1964(c).  In order "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Grp. LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268.

"A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Hemi Grp.*, 559

U.S. at 9 (quoting *Holmes*, 503 U.S. at 271) (alteration omitted); *Doe v. Trump Corp.*, 385 F.

Supp. 3d 265, 275 (S.D.N.Y. 2019).  The Second Circuit has explained that "the reasonably

foreseeable victims of a RICO violation are the targets, competitors and *intended* victims of the

*racketeering* enterprise." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003)

(emphasis added) (citation omitted).  "Courts routinely find that plaintiffs lack standing to bring

a RICO claim, where the plaintiff's injuries are caused not by the RICO violations themselves,

but by the exposure of those acts, or where the plaintiff seeks to recover for injuries caused by

his refusal to aid and abet the violations." *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171,

182 (S.D.N.Y. 2020) (quotation marks omitted).

Plaintiff alleges that he sustained an injury to his business or property when the

Defendants, as part of a campaign of harassment against him, eliminated his title and reduced his

salary by $7,000.  *See* Compl. ¶ 24, ECF No. 105 at 7-8.  This raises the question of the

Individual Defendants' alleged predicate acts, and whether those acts can be said to have a

"direct relation" to Plaintiff's injuries.  *Holmes*, 503 U.S. at 268.  The complaint does not specify

the provisions of 18 U.S.C. § 1961(1)(B) that correspond to the predicate acts allegedly

committed by Defendants.  Instead, the complaint alleges that "Defendants engaged in conduct

constituting a racketeering scheme to steal from and defraud the MVBWS."  Compl. ¶ 51.

Plaintiff also asserts that "[t]he actions taken against Plaintiff was [*sic*] a part and in furtherance

of the racketeering scheme to steal from and defraud MVBWS.  The portion of the scheme that

victimized plaintiff and the entire scheme itself both formed a systemic pattern of racketeering."

*Id.* ¶ 54.  He alleges that the actions taken against him, "as well as the entire scheme, violates 18

U.S.C. § 1962(c) and (d)."  *Id*. ¶ 57.

The actions "taken against Plaintiff" do not qualify as acts of racketeering.  Termination

from employment—and thus, by extension, the lesser consequence of a professional demotion—

is not itself an act of racketeering under Section § 1961(1)(B).  *See Hoatson v. New York*

*Archdiocese*, No. 05-cv-10467 (PAC), 2007 WL 431098, at *5 (S.D.N.Y. Feb. 8, 2007).  Nor is

"intimidation and harassment."  *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03-cv-9612 (GEL),

2004 WL 2071689, at *15 (S.D.N.Y. Sept. 16, 2004).  At best, the complaint can be understood

to allege that the alleged state-level criminal conduct of Defendants Porcari and Thomas—for

Porcari, fraud and theft of funds from the MVBWS, and for Thomas, the alleged receipt of these

funds and/or the criminal charges that led to the need for the criminal defense in the first place—

constitute the requisite predicate acts for purposes of alleging a RICO violation.

But even if Plaintiff had more clearly specified predicate acts under 18 U.S.C. §

1961(1)(B) stemming from the MVBWS scheme, Plaintiff fails to adequately allege a direct

relationship between his injuries and the MVBWS scheme sufficient to satisfy the proximate

cause requirement of the standing inquiry.  RICO's proximate cause standard is a strict one: a

"plaintiff only has standing if, and can only recover to the extent that, he has been injured in his

business or property by the conduct constituting the violation."  *Sedima, S.P.R.L. v. Imrex Co.*,

473 U.S. 479, 496-97 (1985).  "A plaintiff 'does not have standing if he suffers an injury that

was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate

acts, even though the injury was proximately caused by some non-RICO violation committed by

the defendants.'"  *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08-cv-6150

(PAC), 2010 WL 3026510, at *8 (S.D.N.Y. Aug. 2, 2010) (quoting *Baisch v. Gallina*, 346 F.3d

366, 373 (2d Cir. 2003)); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170-71

(S.D.N.Y. 2019).

Lost wages and termination have been deemed too indirect an injury to suffice for RICO standing purposes. "The Second Circuit has held for more than a quarter century that loss of employment for reporting or refusing to participate in an enterprise engaging in a pattern of racketeering activity is not an injury sufficient to confer RICO standing." *Hoatson*, 2007 WL 431098, at *6. In *Burdick v. Am. Exp. Co.*, 865 F.2d 527, 529 (2d Cir. 1989) (*per curiam*), a stockbroker alleged that the defendant committed RICO predicate acts of mail and securities fraud, which were perpetrated against its customers. The plaintiff asserted that he sustained injury to his business or property when he was terminated (and thus lost his client base) for complaining about the defendant's fraudulent activities. *Id.* This was not sufficient to confer standing, as the court concluded that "this type of harm is simply too remotely related to the predicate acts of mail and securities fraud to support a claim under RICO." *Id.* Additionally, the court also rejected Burdick's assertion that "he was discharged as an integral part of the illegal scheme, rather than in retaliation for reporting it," finding that "a differentiation between 'preventive' and 'retaliatory' dismissals in this context would serve no useful purpose." *Id.* at 529-30; *see Hoatson*, 2007 WL 431098, at *7. Similarly, in *Hecht*, the court found that the plaintiff employee, who asserted that he refused to aid or abet alleged RICO violations by his employer and coworkers that were targeted at the employer's customers, did not have standing for injuries from his loss of business commissions or his firing for insubordination. 897 F.2d at 24. There, plaintiff was not the target of the racketeering enterprise, and his loss of commissions was not reasonably foreseeable as a natural consequence of the RICO violations. *Id.*

Plaintiff cites *Kriss v. Bayrock Group LLC*, No. 10-cv-3959 (LGS) (DCF), 2016 WL 7046816, at *19 (S.D.N.Y. Dec. 2, 2016), to support the proposition that a plaintiff "can adequately plead RICO damages by alleging lost contracts or lost wages." *See* Pl.'s ECF No.

105 at 8.  It is true that lost wages can qualify as an injury to business or property for RICO

purposes, but only if the plaintiff can successfully show that his lost wages were proximately

caused by the RICO predicate acts.  *See Kriss*, 2016 WL 7046816, at *19.  In *Kriss*, plaintiffs

were real estate professionals who alleged that the defendant real estate firm fraudulently

concealed material information, bad faith practices, and illegally structured payments in

negotiations with plaintiffs about *their own* employment and compensation, "resulting in the

Bayrock Group Enterprise receiving Plaintiffs' professional services for less than they otherwise

would have agreed."  2016 WL 7046816, at *13.  Plaintiffs alleged that if the defendant had not

fraudulently concealed this information, "[p]laintiffs would have rejected the terms of their

compensation agreements and demanded higher pay, either at Bayrock Group or elsewhere."  *Id.*

at *19.  The court determined that the defendant's fraudulent concealment of this information

from the plaintiffs qualified as predicate acts of mail or wire fraud under RICO—making

plaintiffs the targets and victims of the RICO predicate acts.  *Id.* at *13-14.  The alleged

fraudulent concealment led directly to the plaintiffs' injuries, which was enough to establish

proximate causation under RICO.

    Here, Plaintiff cannot show that there was a direct relationship between the RICO

predicate acts allegedly committed by the Defendants and the injury to his business or property.

Plaintiff was not the target or victim of the fraud and theft committed by the Defendants (except

perhaps in the sense that all residents of the City of Mount Vernon were injured by the theft of

funds from their Board of Water Supply).  *See* Compl. ¶ 1 ("The people of the City of Mount

Vernon were victimized by their own municipal government . . . .").  Rather, he allegedly was

subjected to a campaign of harassment by the Defendants, including demotion with an

accompanying salary reduction, failure to provide reasonable accommodations for his disability,

and denial of access to the MVBWS's books and financial information.  None of the acts

directed at Plaintiff specifically are RICO predicate acts, and it is not sufficient for standing for

Plaintiff to suggest that the employment actions taken against him were carried out in order to

conceal or facilitate the fraud and theft.  *See Cornetta v. Town of Highlands*, 434 F. Supp. 3d at

183 ("allegations of injuries resulting from whistle blowing and non-participation in an

enterprise are insufficient to confer standing for a civil RICO claim") (quoting *Donelli v. Cnty. of

Sullivan*, No. 07-cv-2157, 2009 WL 2365551, at *9 (S.D.N.Y. July 31, 2009)).  The central

question for proximate causation is whether the alleged RICO violation "led directly to the

plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  Here, Plaintiff

has not sufficiently alleged the requisite direct causation.

Plaintiff fares no better with respect to his other alleged damages, including physical pain

and suffering and emotional distress.  *See* Compl. ¶ 49.  "RICO only protects injury to the

plaintiff's business or property, meaning that many injuries are insufficient to establish RICO

standing.  Personal damages, emotional damages, and physical damages, for example, are

insufficient."  *Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 612-13

(S.D.N.Y. 2015) (collecting cases).  Because Plaintiff has failed to allege that there was a direct

relationship between the Defendants' predicate acts and his alleged injuries, he fails to meet the

standing requirements of civil RICO.  Accordingly, the civil RICO claim in count one of the

complaint is DISMISSED.

### 2.  ADA Claims

Defendants Porcari, Thomas, and Marable move to dismiss the failure to accommodate

and disability discrimination claims brought against them under the ADA.  "To state a claim for

discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, *inter alia*,

that [he or she] suffered an adverse employment action because of [his or her] disability."
*Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (summary order)
(quotation marks and alteration omitted).  To state a claim under the ADA for failure to
accommodate, a plaintiff must allege facts showing that: (1) he or she is a person with a
disability under the meaning of the ADA; (2) an employer covered by the statute had notice of
his or her disability; (3) with reasonable accommodation, the employee could perform the
essential functions of the job at issue; and (4) the employer has refused to make such
accommodations.  *Cornetta v. Town of Highlands*, No. 18-cv-12070 (PMH), 2021 WL 4311170,
*3 (S.D.N.Y. Sept. 21, 2021).  But it is well-settled that there is no individual liability under the
ADA.  *See, e.g., Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302-03 (S.D.N.Y. 2016).
Indeed, Plaintiff appears to recognize the futility of pursuing the ADA claims against the
Individual Defendants.  Plaintiff elected not to oppose the motions as to the ADA claims against
Defendants Thomas and Porcari and to "go forward [on this claim] against the City and the
MVBWS."  ECF No. 105 at 14.  And as previously noted, Plaintiff did not oppose the motion
filed by Defendant Marable at all.  Accordingly, the ADA claims in counts two and three of the
complaint are DISMISSED as to the Individual Defendants.

### 3.  First Amendment Retaliation Claim

Where a plaintiff claims that he was retaliated against in violation of the First
Amendment, he must plausibly allege that (1) his speech or conduct was protected by the First
Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal
connection between this action and the protected speech.  *See Montero v. City of Yonkers*, 890
F.3d 386, 394 (2d Cir. 2018); *Raymond v. City of New York*, 317 F. Supp. 3d 746, 772 (S.D.N.Y.
2018).  Again, however, Plaintiff has chosen not to oppose the motions to dismiss this claim filed

by Defendants Porcari and Thomas and instead to "go forward . . . against the City and the

MVBWS," ECF No. 105 at 14, and Plaintiff has not opposed the motion filed by Defendant

Marable. Accordingly, the First Amendment retaliation claim in count four of the complaint is

DISMISSED as to the Individual Defendants.

**C. Defendant Thomas' Motion to Dismiss the City's Crossclaim for Indemnification**

The City Defendants bring a crossclaim for indemnification against the Individual

Defendants (who are also collectively the "Cross-Defendants"). City Defs.' Answer at 31.

Cross-Defendant Thomas filed a motion to dismiss the City Defendants' crossclaim, *see* ECF

No. 103 at 31-32; Cross-Defendants Porcari and Marable have neither moved to dismiss nor

answered the crossclaim.

A motion to dismiss a crossclaim is analyzed "under the same standard" as a motion to

dismiss a complaint. *Am. Med. Distribs v. Macdonald Tuskey*, No. 16-cv-6016 (VSB), 2018 WL

1478301, at *2 (S.D.N.Y. Mar. 23, 2018). Pursuant to Rule 13(g) of the Federal Rules of Civil

Procedure, "[a] pleading may state as a crossclaim any claim by one party against a coparty if the

claim arises out of the transaction or occurrence that is the subject matter of the original action."

A "coparty" means any existing party to an action that is not an opposing party. *Luyster v.

Textron, Inc.*, 266 F.R.D. 54, 63-64 (S.D.N.Y. 2010). Thus, "a crossdefendant must be a current

party to the action." 3 Moore *et al.*, Moore's Federal Practice § 13.71[1] (3d ed. 2020). As a

result of this Decision and Order, however, the Individual Defendants are no longer parties to the

first-party action, and only would remain part of the action if the crossclaim is allowed to

proceed. But where all federal claims against certain parties have been dismissed and the only

remaining claims against those parties are non-federal crossclaims, a federal court has discretion

to dismiss the non-federal crossclaims.  *See Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc.*, 823 F. Supp. 1191, 1197 (E.D. Pa. 1993).

Pursuant to 28 U.S.C. § 1367(a), a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  This provision is subject to exceptions, and a district court may decline to exercise supplemental jurisdiction over a claim that is eligible for supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  If a court determines that a category of subsection 1367(c) is applicable, it must evaluate whether the exercise of such jurisdiction would promote "economy, convenience, fairness, and comity."  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004).

"The principle of common law, or implied, indemnification permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party."[8]  *Morgan Art Found. Ltd. v. McKenzie*, No. 18-cv-4438 (AT), 2019 WL 2725625, at *18 (S.D.N.Y. July 1, 2019) (alteration omitted).  "Generally, claims concerning indemnification obligations are not ripe for adjudication until liability has been imposed upon the party to be indemnified."  *Bhd. Mut. Ins. Co. v. Ludwigsen*, No. 16-cv-6369 (CS), 2018 WL 4211319, at *17 (S.D.N.Y. Sept. 4, 2018) (quotation marks and alterations omitted); *FSP, Inc. v. Societe Generale*, No. 02-cv-4786 (GBD), 2003 WL 124515, at *4 (S.D.N.Y. Jan. 13, 2003).  Courts in the Second Circuit have found that claims for indemnification may be raised prior to

---

[8] At no point in the crossclaim itself or in the City Defendants' memorandum of law in opposition to Cross-Defendant Thomas's motion to dismiss the crossclaim (ECF No. 107) do the City Defendants suggest that their indemnification claim is grounded in federal law.

the entry of judgment, even if they are not otherwise ripe, "in order to promote fairness and judicial economy . . . so that all parties may establish their rights and liabilities in one action." *Nevares v. Morrissey*, No. 95-cv-1135 (JGK), 1998 WL 265119, at *9 (S.D.N.Y. May 19, 1998) (quoting *Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995)).  But given the current procedural posture and economic factors in this matter, with the Cross-Defendants having now been dismissed entirely from the first-party action, no economy of judicial—or municipal—resources would be achieved by permitting the indemnification claim to remain part of this matter.  *See Cucchiara v. Hollingsworth*, No. 15-cv-314 (KBF), 2016 WL 6068193, at *8 (S.D.N.Y. Oct. 14, 2016) (refusing to exercise supplemental jurisdiction over indemnification claim because by virtue of the Court's ruling, the City was no longer a defendant to the primary action brought by plaintiff, and allowing the indemnification claim to proceed would "inequitably force the City to remain involved in this lawsuit through verdict even though its interest arises only if [the first-party defendant] is found liable to the plaintiff."); *Nevares*, 1998 WL 265119, at *9 (refusing to allow a third-party action for indemnification).

The Court has "dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), as to the Individual Defendants, potentially leaving only City Defendants' non-federal crossclaims for indemnification against the Cross-Defendants as active claims. Considering the necessary factors of economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over the crossclaim against the Cross-Defendants. There is no issue of unfairness or inconvenience for the City Defendants in having the crossclaim dismissed—the indemnification claim will not ripen unless there is a judgment entered against the City Defendants, and any litigation regarding indemnification would be held in abeyance until after a trial on Plaintiff's first-party claims.  Dismissing the crossclaim at this stage will not

result in any delay of the resolution of the City Defendants' indemnification claim, nor would the City Defendants lose the ability to pursue that claim as a result of this dismissal. *See Cucchiara*, 2016 WL 6068193, at *8; *Nevares*, 1998 WL 265119, at *7.  Contrary to the assertions of the City Defendants, this approach would be more economical, from both a judicial and financial perspective, as no action will be required unless a judgment is rendered against the City.  And because this case is at a very preliminary stage, dismissal of the non-federal crossclaim again does not prejudice the City Defendants in terms of a waste of financial or strategic resources already invested in this litigation.  As to the question of comity, it is more appropriate to allow a potential common law claim for indemnification by municipal actors against former senior municipal officials to be adjudicated in state, rather than federal, court, given the possibility that the Cross-Defendants may have defenses based on provisions of state or municipal law.

The City Defendants cite a number of cases where courts have declined to dismiss crossclaims for indemnification and concluded that the indemnification claims were not premature, *see* ECF No. 107 at 3, but in those cases the cross-defendants had not been dismissed from the suit, and it thus made more sense from the standpoint of economy, convenience, fairness to "determine the liabilities of all parties in a single action."  *Harris*, 921 F. Supp. at 1062.  The circumstances presented here, in light of this Decision and Order, are markedly different.

The City Defendants note that the City is struggling financially, *see* ECF No. 107 at 3, and suggest that economic efficiency would support this Court's exercise of jurisdiction over the crossclaims.  Indeed, the City's financial condition has become an issue in this case as a result of the ongoing dispute concerning the City's ability to pay the legal bills of private counsel.  *See, e.g.*, ECF Nos. 86, 113, 133, 136-37, 140.  That said, economic considerations plainly favor

dismissal of the crossclaim.  Allowing the crossclaim to proceed against the Cross-Defendants very likely would require private counsel to continue to actively work on the case as it proceeds—including, among other things, participating in court conferences, propounding and responding to written discovery demands, and attending depositions of parties other than their own clients—all at the City's expense.  The involvement of private counsel will plainly be more limited if the Cross-Defendants are non-parties at this stage.

Having considered all of the relevant factors, the Court declines to exercise supplemental jurisdiction over the non-federal crossclaim of the City Defendants, and City Defendants' crossclaim against Defendant Thomas is DISMISSED.

Although Defendant Thomas is the only Cross-Defendant who moved to dismiss the crossclaim, the Court hereby dismisses *sua sponte* the City Defendants' crossclaim against Cross-Defendants Porcari and Marable as well.  The crossclaim is pled collectively against all three Cross-Defendants, and the legal principles underlying the dismissal of the crossclaim apply equally to all of the Cross-Defendants.  *See Beck v. City of New York*, No. 12-cv-9231 (RA), 2014 WL 80544, at *1 n. 2 (S.D.N.Y. Jan. 3, 2014) ("Because the Court's rulings in this Order would apply equally to the [nonmoving defendants], the Court dismisses the claims against [them] *sua sponte*.").  As required, the City Defendants had a sufficient opportunity to be heard, and to raise objections to dismissal, in response to Defendant Thomas's motion.  *See Palkovic v. Johnson*, 150 F. App'x 35, 37 (2d Cir. 2005) ("[A] district court has the power to dismiss a [claim] *sua sponte* for failure to state a claim upon which relief can be granted . . . only where a plaintiff has been given 'an opportunity to be heard.'" (internal citation omitted) (quoting *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988)); *Fratelli BVBA v. APM Music Servs., LLC*, No. 20-cv-6208 (JPC), 2021 WL 4429417, at *6 (S.D.N.Y. Sept. 27, 2021) (dismissing "virtually

identical" claim against one non-moving defendant).  Accordingly, the crossclaim is also DISMISSED as to Cross-Defendants Porcari and Marable.

## CONCLUSION

For the forgoing reasons, all three Individual Defendants' motions to dismiss are GRANTED, and Defendant Thomas' motion to dismiss the crossclaim is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 90, 102, and 128.

This Decision and Order dismisses all claims currently pending against Porcari, Thomas, and Marable in their capacities as Defendants and Cross-Defendants.  It also dismisses the crossclaims of the City of Mount Vernon and the Mount Vernon Board of Water Supply. Accordingly, the Clerk of the Court is respectfully directed to update the docket sheet to reflect that (i) Porcari, Thomas, and Marable are terminated as defendants; (ii) Porcari, Thomas, and Marable are terminated as Cross-Defendants; and (iii) the City of Mount Vernon and the Mount Vernon Board of Water Supply are terminated as crossclaimants; *but* (iv) the City of Mount Vernon and the Mount Vernon Board of Water Supply are NOT terminated either as defendants or as a counterclaimants.

The Court will issue a separate order to schedule a conference to discuss next steps in this matter.

Dated:  September 30, 2021
        White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge